# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA Ex Rel.   )
HAILE KIROS NICHOLSON,            )
                                     )
         Plaintiffs,          )
                                     )        1:16CV246
         v.                )
                                     )
INTEGRA LIFESCIENCES          )
CORPORATION, *et al.*,          )
                                   )
         Defendants.   )

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, Senior District Judge.

Plaintiff Haile Nicholson (hereinafter "Relator") initiated this qui tam proceeding on behalf of the United States and several states against Integra Life Sciences Corporation (hereinafter "Integra"), MiMedx Group, Inc. (hereinafter "MiMedx"), Dr. Phillip Varca, Dr. Peter Pantera, Smith & Nephew, Inc. (hereinafter "Smith & Nephew"), Rob Holloway, and unknown John Does (collectively known as "Defendants"), pursuant to multiple provisions of the False Claims Act (hereinafter "FCA"), 31 U.S.C. §§ 3729–3733, and FCA analogous state statutes. (ECF No. 95.) Before the Court are three Motions to Dismiss, (ECF Nos. 131; 137; 143), filed by Defendants Integra, Smith & Nephew, and Holloway, respectively. For the reasons stated herein each of these Defendants' motions will be granted in part, to the extent that Relator's federal claims are dismissed with prejudice. Further, each of these Defendants' motions are denied in part, to the extent that Relator's state-law claims are dismissed without prejudice.

## I.    BACKGROUND

### A.    The Operative Complaint[1]

Relator alleges that he was employed as a sales representative for Defendant Integra's "predecessor company" in 2014 and for Defendant Integra itself from approximately March 2015 until September 2017.  (ECF No. 95 at 3 ¶ 4, 18 ¶ 30.)  According to the Complaint, it is alleged that Defendant Integra is a corporation that distributes medical products, including "Primatrix," "Omnigraft," and "Integra Dermal Therapy" to medical facilities and physicians across the United States.  (*Id.* at 4–5 ¶ 5.)  Relator claims that his responsibilities included promoting these products to medical facilities and physicians, as well as interfacing with personnel who purchased, reimbursed, and distributed these products to patients.  (*Id.* at 3 ¶ 4, 16 ¶ 27.)  Relator further claims that Defendant Integra also hired independent contractors to perform tasks similar to those done by its in-house sales representatives.  (*Id.* at 3–4 ¶ 4.)

One of the companies from which Defendant Integra employed independent contractors is a company called "MedCom," which is alleged to be owned by Jeff Turpin.  (*Id.* at 3 ¶ 4, 4 ¶ 4.)  The Complaint also alleges that independent contractors were paid sales commissions based on the volume or the value of their sales of products, including Defendant Integra's products.  (*Id.* at 3–4 ¶ 4.)  Relator claims that Defendant Integra's independent contractors had less restrictions and oversight than its in-house sales representatives.[2]  (*Id.* at 4 ¶ 4.)  Relator alleges that he interacted with these independent contractors while at company

---

[1] Nearly all of the paragraphs of allegations in Relator's Second Amended Complaint are lengthy, some so long that they proceed cover several pages.  In order to more precisely cite to Relator's allegations, the Court will, when necessary, cite first to the page of the Complaint and then cite the paragraph of the Complaint.

[2] Relator often refers to Defendant Integra's in-house sales representatives as its "bonafide employees" or "full-time employees."  (*See, e.g.*, ECF No. 95 at 4 ¶ 4.)

2

events for Defendant Integra and while promoting and distributing Defendant Integra's products. (*Id.* at 3 ¶ 4.) According to Relator's allegations, he distributed medical products and met with the same doctors as the independent contractors did, including two of the named Defendants in this case, Drs. Pantera and Varca. (*Id.* at 19 ¶¶ 31–32, 23 ¶ 37, 25 ¶ 39, 26 ¶ 40.)

While employed by Defendant Integra, Relator alleges that one of the independent contractors he interacted with was Defendant Rob Holloway. (*Id.* at 5 ¶ 9, 13 ¶ 26.) Relator further alleges that at that time Defendant Holloway worked for MedCom in Durham, North Carolina, and promoted Defendant Integra's products, including Primatrix and Integra Dermal Therapy. (*Id.* at 13 ¶ 26.) Also, while at Integra, Relator claims he communicated with another sales representative named Mark Frazier, who was alleged to be employed by a company called "Osiris Therapeutics." (*Id.* at 25 ¶ 39.) Relator alleges Osiris Therapeutics is now owned by Defendant Smith & Nephew. (*Id.*) While at Osiris Therapeutics, Frazier allegedly promoted products such as "Graphix" (also known as "Stravix"), which is now distributed by Defendant Smith & Nephew. (*Id.* at 10 ¶ 23, 10–11 ¶ 24, 25 ¶ 39.)

Relator alleges that while at Integra, he observed and was made aware of Defendants' engagement in a scheme to present false claims to federal healthcare programs for the care of patients who were covered by and receiving care from these programs. (*Id.* at 3 ¶ 4, 4 ¶ 4, 11 ¶ 25.) Relator also alleges that medical providers repeatedly made new claims for reimbursement from federal healthcare programs for products sold by certain Defendants when unnecessary for patients, or when providers were simply re-using previously used products. (*Id.* at 18 ¶ 30, 23–24 ¶ 37, 25–26 ¶ 39.) In addition, Relator claims that Defendant Integra allowed MedCom to pay the independent contractor sales representatives it employed

3

on a commission based on the volume or value of the federal reimbursement of Integra's products. (*Id.* 17 ¶ 27.) Relator also claims that FCA violations occurred when doctors, including Defendants Pantera and Varca, would solicit medical products owned and marketed by Defendants Integra and Smith & Nephew, based on what illegal kickbacks and other incentives were made available to these doctors. (*Id.* at 11 ¶¶ 25–26, 18 ¶ 30, 25 ¶ 39, 26 ¶ 40, 27 ¶ 42.) These alleged kickbacks and incentives included free meals, patronization of various night clubs, and other forms of "in-kind inducements." (*Id.* at 11 ¶¶ 25–26, 18 ¶ 30, 19 ¶ 32, 21 ¶ 35, 22 ¶ 35, 23 ¶ 37.) According to the Complaint, when doctors solicited medical products based on these incentives, and subsequently asked for those medical products to be paid in part or in full through a government healthcare program, these actions constituted false claims to the United States, violating the FCA and related state statutes. (*Id.* at 11 ¶ 25, 26 ¶¶ 40–41.)

B.     **Procedural History**

On March 29, 2016, Relator initiated this action against Defendants Integra, MiMedx, Pantera, and Varca by filing his first complaint (hereinafter "Original Complaint") on behalf of the United States. (ECF No. 1.) Relator alleged the initial defendants, Integra, MiMedx, Dr. Varca, and Dr. Pantera, violated three provisions of the FCA, the Social Security Act's prohibition of physician self-dealing, and the Anti-Kickback Statute. (*Id.* at ¶¶ 25–47.) Before the United States declared whether it would intervene in this action, Relator moved for leave to file an amended complaint, which this Court granted and kept sealed (hereinafter "First Amended Complaint"). (ECF Nos. 11, 12.) Over the next five years, this Court granted the United States multiple extensions of time to decide whether it would intervene in this action, along with extensions of time for Relator to file another amended complaint.

Meanwhile, Relator filed a separate action in this District against MedCom and Jeff Turpin on behalf of the United States (hereinafter "the MedCom action"). *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, No. 1:17CV34, 2020 WL 1245374 (M.D.N.C. Mar. 16, 2020), *aff'd*, 42 F.4th 185 (4th Cir. 2022) [hereinafter *MedCom I*]. Relator alleged that MedCom and Jeff Turpin violated the FCA, the North Carolina False Claims Act, and the federal Anti-Kickback Statute by paying "commissions to nonemployee contractors to induce referrals of medical services." *Id.* at *1. Defendants Integra, Smith & Nephew, and Holloway were not named Defendants in *MedCom I*. *See id.* However, Defendants Integra and Holloway were discussed in the *MedCom I* complaint. *Id.* at *2, *8 (citing Relator's MedCom action Complaint ¶ 16).

The United States declined to intervene in the MedCom action. *Id.* at *1. Subsequently, MedCom and Turpin filed a joint Motion to Dismiss in lieu of answering Relator's complaint. *Id.* at *3. The court granted MedCom and Turpin's joint motion, dismissing Relator's federal and state-law claims against them with prejudice. *Id.* at *13. Relator then filed a Motion to Alter or Amend the Judgment and Leave to File an Amended Complaint and the court denied this motion. *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, No. 1:17CV34, 2021 WL 981240, at *1 (M.D.N.C. Mar. 16, 2021), *aff'd as modified*, 42 F.4th 185 (4th Cir. 2022) [hereinafter *MedCom II*]. Relator then appealed to the Fourth Circuit.

While the MedCom action was pending Fourth Circuit review, Relator's First Amended Complaint in this action was unsealed and filed on behalf of the United States, and also on behalf of the states of Illinois, Louisiana, Massachusetts, Michigan, North Carolina, Tennessee, and Virginia (hereinafter collectively "the State Plaintiffs"). (ECF No. 64 ¶ 4.) The First Amended Complaint brought FCA claims against the same defendants named in the Original

Complaint, and added a state analog FCA claim for each of the State Plaintiffs added to the litigation. (*Id.* ¶¶ 1, 36–60, 61–133.) Each of the State Plaintiffs declined to intervene in the First Amended Complaint. (ECF No. 66.) The United States declined to intervene in part but intervened in Relator's claims against Defendant MiMedx and Defendant Integra. (ECF No. 61.)

After the First Amended Complaint was filed, Defendant MiMedx was dismissed from this action after reaching a settlement between with the United States and Relator. (ECF No. 70.) Later, Defendant Varca was also dismissed from this action. (ECF No. 166.) While the MedCom action progressed, settlement talks continued between Relator, the United States, and Defendant Integra. (ECF Nos. 77, 79, 82.) The Fourth Circuit held oral argument[3] in the MedCom action. *See United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 199 (4th Cir. 2022) [hereinafter *MedCom III*].[4] Thereafter, on July 21, 2022, the Fourth Circuit affirmed, while modifying, the decisions in *MedCom I* and *MedCom II*. *Id.* at 200.

On August 1, 2022, in this action the United States filed a Notice of Settlement between it, Relator, and Defendant Integra. (ECF No. 88 at 1.) In this notice, the United States stated that it would also soon file a partial stipulation of dismissal of its claims against Defendant Integra and also that Relator would soon file another amended complaint. (*Id.* at 1–2.) Relator then filed another amended complaint (hereinafter "Second Amended Complaint"), on October 28, 2022. (ECF No. 95.) In his Second Amended Complaint Relator brought its

---

[3] In his motion to dismiss filings, Relator made several arguments contending that the Fourth Circuit, during oral argument in the MedCom action, suggested that he make or address certain arguments in the instant case. (ECF Nos. 145 at 8 n. 8; 146 at 4, 13; 149 at 4, 9, 19.) The Court found these arguments both misleading and unavailing.

[4] The Fourth Circuit modified the district court's decision by dismissing the state law claims without prejudice rather than with prejudice. *MedCom III*, 42 F.4th at 200.

6

previous claims against Defendants Integra, MiMedx, Varca, and Pantera. (*Id.* at 1 ¶ 1.) Further, Relator added two defendants, Defendant Smith & Nephew and Defendant Holloway to this litigation. (*Id.*) Relator also added a FCA retaliation claim[5] against Defendant Integra. (*Id.* at 30 ¶¶ 61–65, 30–31 ¶ 66.)

The State Plaintiffs again declined to intervene in the Second Amended Complaint. (ECF Nos. 101 at 1; 105 at 1.) The United States declined to intervene in any of Relator's claims against the Defendants Smith & Nephew and Holloway, claims released by settlement agreements with Defendants Integra and MiMedx, and Relator's new claim against Defendant Integra. (ECF No. 100 at 1, 2.) However, the United States maintained its intervention in the allegations of one paragraph of facts in the First Amended Complaint—related to Defendant Integra's alleged use of "individuals who were not bonafide employees" to conduct FCA-prohibited conduct. (*Id.* at 2 (citing ECF No. 64 ¶ 28).)[6] This paragraph does not exist in the Second Amended Complaint as it was once written in the First Amended Complaint. However, the substance of this paragraph is now part of Relator's new allegations: that Defendant Integra used independent contractors to pursue its FCA-prohibited conduct. (*Id.* (citing ECF No. 64 ¶ 28); *compare* ECF No. 64 ¶ 28 *with* ECF No. 95 ¶¶ 26–27.) The United States subsequently filed its stipulation of dismissal for itself and Relator, asking that certain of their claims against Defendant Integra, resolved by settlement agreement, be dismissed with prejudice. (ECF No. 103 ¶¶ 1, 3.)

---

[5] Relator at times refers to this as a "constructive discharge" claim. (*See, e.g.*, ECF Nos. 95 at 30 ¶ 65; 146 at 18, 19, 20, 21.)

[6] Though the Government purports to maintain its intervention in a paragraph written in the First Amended Complaint, the most recently filed amended complaint is the operative complaint in the district court. *See Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 452 (4th Cir. 2017). In the instant case, the operative amended complaint is the Second Amended Complaint, (ECF No. 95).

After the Second Amended Complaint was unsealed, Defendants Integra, Smith & Nephew, and Holloway each filed motions to dismiss in lieu of answers. (ECF Nos. 131; 137; 143.) Relator subsequently filed his responses to each of the three motions to dismiss. (ECF No. 145; 146; 149.) Defendants Integra, Smith & Nephew, and Holloway filed their replies. (ECF Nos. 147; 148; 154.) Relator also filed three motions to strike arguments made in those replies, which were each denied by separate Order of this Court. (ECF No. 168.) The pending motions to dismiss are now ripe for this Court's consideration and will be addressed in turn.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). A complaint fails to state a claim when it does not make "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), or does not "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8(a)(2) requirements thereby "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation marks and citation omitted).

Suits brought under the FCA sound in fraud and are thus "subject to Federal Rule of Civil Procedure 9(b), which requires that claimants plead fraud with particularity" to survive a motion to dismiss. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir. 1999); *see also United States ex rel Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (citations omitted). When a Complaint does not meet the heightened pleading requirements of Rule 9(b), then it fails to state a claim under Rule 12(b)(6). *Philipps v. Fruchterman,* No. 1:23-

8

CV-845, 2024 WL 3212684, at *4 (M.D.N.C. Apr. 8, 2024) (citing *Draughon v. Smith*, No. 21-CV-101, 2021 WL 4927981, at *2 (E.D.N.C. Oct. 21, 2021) (citing *Harrison*, 176 F.3d at 783 n. 5)).

A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, i.e., a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see, e.g., Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Although Rule 9(b) heightens the pleading standard for FCA claims, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [they] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.

In reviewing a Rule 12(b)(6) motion "only the legal sufficiency of the complaint, and not the facts in support of it" are tested; therefore, this Court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)) (additional citation omitted). Further while this Court "must take the facts in the light most favorable to the plaintiff, [it] need not accept the legal conclusions drawn from the facts." *Id.* (citation omitted). A complaint that alleges only legal conclusions will not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" also does not suffice. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 555). Moreover, "mere conclusory and speculative allegations" are insufficient, *Brown*, 716 F.3d at 350, and a court

9

"need not accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Vitol, S.A. v. Primrose Shipping Co.*, 708 F.3d 527, 548 (4th Cir. 2013) (citation omitted)).

Defendant Smith & Nephew argues that the claims against it should be dismissed under Rule 12(b)(6) because of Relator's failure to comply with the pleading requirements of Federal Rules of Procedure 8 and 9, as well as the precise pleading requirements for FCA claims. (ECF No. 138 at 6.) Defendant Holloway argues that Relator's claims against him should be dismissed because of the preclusive effect of the MedCom action, and in the alternative should be dismissed because of Relator's failure to comply with applicable pleading requirements. (ECF No. 144 at 2.) Finally, Defendant Integra argues that Relator's claims against it should be dismissed because of the preclusive effect of the MedCom action, the terms of its binding settlement agreement, the FCA's statute of limitations for retaliation claims, and the pleading requirements of Federal Rules of Civil Procedure 8 and 9 and those applicable to FCA claims. (ECF No. 132 at 13.)

All three Defendants ask for the claims against them to be dismissed with prejudice. (ECF Nos. 132 at 13; 138 at 6; 144 at 2.) Relator contests each of the grounds for Defendants' respective motions to dismiss and ask that his claims be permitted to proceed. (*See* ECF Nos. 145 at 17; 146 at 21; 149 at 21.) The Court will address each motion to dismiss in turn.

## III.  SUMMARY OF LAW FOR RELATOR'S FEDERAL CLAIMS

### A.  Relevant Law for Counts I and II of Relator's Complaint: Presentment and False-Record-Or-Statement Claims Under the FCA

The FCA imposes liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). This is known as "a presentment claim." *See MedCom III*, 42 F.4th at 193. The FCA also imposes liability on "any person who . . . knowingly makes, uses, or causes to be made or used,

10

a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). A claim made under this section of the statute is known as a "false-record-or-statement" claim. *See MedCom III*, 42 F.4th at 193. In the Fourth Circuit, "[b]oth a presentment claim and a false-record-or-statement claim under the False Claims Act require four elements" to be proven. *Id.* (citing *Harrison*, 176 F.3d at 788).

To plead a presentment claim and a false-record-or-statement claim, "a relator must plausibly allege four distinct elements: '(1) [ ] there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter [knowledge]; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a "claim").'" *U.S. ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700 (4th Cir. 2014) (alterations in original) (quoting *Harrison*, 176 F.3d at 788). "Failure to adequately allege any of these elements dooms a claim." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 188 (4th Cir. 2022) (citing *Harrison*, 176 F.3d at 788). Further, because of the nature of an FCA claim, a relator must allege a defendant's violations of the FCA with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. *MedCom III*, 42 F.4th at 194 (citing *Grant*, 912 F.3d at 196; Fed. R. Civ. P. 9(b)).

Relator also alleges that Defendants violated the FCA via the federal Anti-Kickback Statute. (*See* ECF No. 95 at 6 ¶ 11, 27 ¶ 43.) The Anti-Kickback Statute prohibits a person from knowingly soliciting or receiving remuneration in return for any good, facility, service, or item that will be paid for, even in part, by a federal health care program, such as Medicare or Medicaid. *See* 42 U.S.C. § 1320a-7b(b)(1)(B). The Antikickback Statute states that "a claim that includes items or services resulting from a violation of [the Anti-Kickback Statute]

constitutes a false or fraudulent claim for purposes of [the FCA]."  42 U.S.C. § 1320a-7b(g);

see also *United States ex rel. Lutz v. Mallory*, 988 F.3d 730, 741 (4th Cir. 2021) (citations omitted).[7]

## B.   Relevant Law for Count III of Relator's Complaint: Conspiracy to Violate the FCA

In Count III, Relator alleges that all Defendants violated the conspiracy provision of the FCA.  (ECF No. 95 ¶¶ 57–60.)  The FCA penalizes any persons who conspire to engage in any of the statute's prohibited acts under § 3729(a)(1), including those acts alleged in Relator's first and second claims against Defendants.  31 U.S.C. §§ 3729(a)(1)(C).  Under § 3729(a)(1)(C) of the FCA, it is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government."  *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 672 (2008).  Instead, it must be shown that the conspirators intended "to defraud the Government."  *Id.* (quoting 31 U.S.C. § 3729(a)(3) current version at 31 U.S.C. § 3729(a)(1)(C)); *see also MedCom III*, 42 F.4th at 193.

In addition, "[w]here the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of 'getting' the false record or statement to bring about the Government's payment of a false or fraudulent claim."  *Sanders*, 553 U.S. at 672–73.  While it is not necessary for a relator "to show that the conspirators intended the false record or statement to be

---

[7] Relator also alleges that "Defendants have routinely violated the Stark Law, 42 U.S.C. § 1395 (nn), which prohibits self-referrals, and more specifically prohibits a physician from making certain referrals to entities with which the physician has a financial relationship."  (ECF No. 95 ¶ 44.)  However, this does not materialize into a count in Relator's Second Amended Complaint, nor does Relator make any factual allegation that he claims is made to support his conclusion that the Defendants have violated the Stark Law.  Accordingly, this Court finds these allegations, to the extent they even constitute a claim, fail Rule 8's plausibility requirements.  *See* Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal citations omitted) (interpreting Federal Rule of Civil Procedure 8(a)(2)).

presented directly to the Government, . . . it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim." *Id.* at 673.

### C. Relevant Law for Count IV of Relator's Complaint: FCA Retaliation

In Count IV, Relator alleges that Defendant Integra violated the anti-retaliation provision of the FCA. (ECF No. 95 ¶¶ 61–66.) The FCA permits any individual to pursue a civil remedy when they are retaliated against by their employer because of their complaints, participation, or assistance with FCA investigations or proceedings. 31 U.S.C. § 3730(h)(1)–(2). Retaliatory employment actions occur under the statute when "[a]ny employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of [their] employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1). Relator alleges that Defendant Integra "knew that [Relator] engaged in activity protected under the statute, and subjected [Relator] to intolerable and illegal conditions anyway[,] which eventually led to his constructive termination." (ECF No. 95 ¶ 65.) To bring an FCA retaliation claim, Relator must establish that: "(1) he engaged in 'protected activity' by acting in furtherance of a qui tam suit; (2) his employer knew of these acts; and (3) his employer took adverse action against him as a result of these acts." *Glynn v. EDO Corp.*, 710 F.3d 209, 214 (4th Cir. 2013) (citing *Zahodnick v. Int'l Bus. Mach. Corp.*, 135 F.3d 911, 914 (4th Cir.1997)).

## IV. DEFENDANT SMITH & NEPHEW'S MOTION TO DISMISS RELATOR'S FEDERAL CLAIMS WILL BE GRANTED

Defendant Smith & Nephew argues that Relator does not allege a plausible pleading as required by Federal Rule of Civil Procedure 8. (ECF No. 138 at 14.) Defendant Smith &

Nephew further argues that Relator does not plead with particularity, as required by Federal Rule of Civil Procedure 9, in that he declines to point to specific false claims it has made in violation of the law, among other things. (*Id.*) Further, Defendant Smith & Nephew argues Relator also does not meet the specific pleading requirements of Rule 9(b) as it applies to FCA claims. (*Id.*) Relator argues in response that he did provide sufficient and specific examples of unlawful conduct to bring a claim against Defendant Smith & Nephew, including conduct by Defendant Smith & Nephew's employee, Mark Frazier, and Defendant Pantera. (ECF No. 145 at 7, 8, 9, 10, 14, 15.) Relator further argues that the government's initial intervention in the case and settlement with corporate Defendants "indicates that [his allegations] are credible." (*Id.* at 5–6.)

Federal Rule of Civil Procedure 8 requires that a pleading must be facially plausible. *See* Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570) (internal citations omitted) (interpreting Federal Rule of Civil Procedure 8(a)(2)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Although some aspects of a complaint may be pled generally, this does not mean litigants can "evade the less rigid—though still operative—strictures of Rule 8." *Id.* (citation omitted).

Rule 9(b) states that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b)'s purposes "apply with special force" to claims brought under the FCA. *Grant*, 912 F.3d

at 197 (citation omitted). Under Tule 9(b), a proper pleading for an FCA action, "'describe[s] the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [they] obtained thereby' . . . [and] allege[s] 'the who, what, when, where, and how of the alleged fraud.'" *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 (4th Cir. 2014) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 U.S. 370, 379 (4th Cir. 2008)). A relator may also "allege a pattern of conduct that would '*necessarily* have led[ ] to submission of false claims' to the government for payment." *Grant*, 912 F.3d at 197 (4th Cir. 2018) (alteration and emphasis in original) (citing *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.,* 707 F.3d 451, 457 (4th Cir. 2013)).

This Court finds that Relator's allegations as to Defendant Smith & Nephew are simply too threadbare to meet even the pleading standards of Rule 8 and certainly do not rise to the level necessary to sustain a FCA claim under Rule 9(b). After the parties are identified, Relator's Second Amended Complaint references Defendant Smith & Nephew in only three paragraphs. (ECF No. 95 ¶¶ 23, 24, 39.) The first two of those paragraphs merely identify medical products, Graphix and Stravix, alleged to be sold by Defendant Smith & Nephew. (*Id.* ¶¶ 23, 24.) Moreover, on some occasions, Relator refers to Graphix and Stravix as different medical products, and other times, he identifies them as the same product. (*Compare id.* ¶¶ 23, 24 *with id.* at 25 ¶ 39.)

The third of those three paragraphs where Relator mentions Defendant Smith & Nephew is the only part of the Second Amended Complaint that contains allegations about the unlawful actions of Defendant Smith & Nephew. (*Id.* ¶ 39.) In that paragraph, Relator alleges this wrongdoing was done by Defendant Smith & Nephew's alleged sales representative, Mark Frazier. (*Id.*) Relator alleges that Mr. Frazier marketed Graphix and

Stravix on behalf of Osiris Therapeutics, a company which was acquired by Defendant Smith & Nephew at some time unalleged by Relator. (*Id.*) The Second Amended Complaint claims that Mr. Frazier was "subject" to Defendant Dr. Pantera's "demands" and acted "pursuant to [Defendant] Pantera's pay for play scheme." (*Id.*) Relator further alleges that he learned that Mr. Frazier was "provid[ing] free lunches/dinners in exchange for the utilization of Graphix or Stravix." (*Id.*) Although in some parts of this paragraph Relator alleges some of these meals provided by Mr. Frazier occurred in May 2016, at other times, it is unclear when Relator is alleging these meals occurred and who is providing them to Defendant Pantera. (*Id.*)

These allegations are too sparse for Relator to sustain claims against Defendant Smith & Nephew. Relator's allegations against Defendant Smith & Nephew are threadbare recitals of wrongdoing, done at a level of generality that leaves the Court unable to discern even a basic understanding of Defendant Smith & Nephew's alleged violations of the FCA. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 556). Further, there is virtually no information about "who, what, when, where, and how of the alleged fraud" as it relates to Defendant Smith & Nephew. *Kellogg*, 525 F.3d at 379 (citations omitted). Finally, even to the extent that Smith & Nephew was allegedly a part of the Defendants' larger unlawful scheme, Relator failed to show how Defendant Smith & Nephew itself engaged in "a pattern of conduct that would '*necessarily* have led[ ] to submission of false claims' to the government for payment." *Grant*, 912 F.3d at 197 (alterations and emphasis in original) (citing *Nathan*, 707 F.3d at 457).

Accordingly, Relator's federal claims against Defendant Smith & Nephew must be dismissed for failure to comply with Federal Rules of Procedure 8(a)(2) and 9(b).

## V. DEFENDANT HOLLOWAY'S MOTION TO DISMISS RELATOR'S FEDERAL CLAIMS AGAINST HIM IS GRANTED

Defendant Holloway argues that Relator's federal claims against him are barred by both claim preclusion and issue preclusion. (ECF No. 144 at 7, 8, 11.) Further, Defendant Holloway argues that if the federal claims against him are not barred by the preclusive effect of the MedCom action, they must be dismissed for failing to be properly pled. (*Id.* at 16–21, 23–24.) In response, Relator argues that Defendant Holloway failed to show that claim or issue preclusion bars Relator's claims against him. (ECF No. 149 at 5–12.) Relator argues in addition that he has adequately pled violations of the FCA as it relates to Defendant Holloway. (*Id.* at 12–21.) Because this Court finds that Defendant Holloway's claim preclusion defense is dispositive, it will not consider Defendant Holloway and Relator's additional arguments for and against dismissal of Relator's claims against Defendant Holloway.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Montana v. United States,* 440 U.S. 147, 153–54 (1979)). Claim preclusion "generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). Though it is an affirmative defense, a party may bring a Rule 12(b)(6) motion to dismiss based on claim preclusion. *Andrews v. Daw,* 201 F.3d 521, 524 n. 1 (4th Cir. 2000) (citing *Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 75 (4th Cir. 1967)). If a claim is found to

17

violate the claim preclusion doctrine, the violative cause of action must be dismissed against the party asserting the defense. *See Duckett v. Fuller*, 819 F.3d 740, 744 (4th Cir. 2016) (citing *Maine*, 532 U.S. at 748–49).

When considering the preclusive effect of a federal-court judgment, this Court relies on federal common law. *Taylor*, 553 U.S. at 891 (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001)); *accord U.S. ex rel. May v. Purdue Pharma, L.P.*, 737 F.3d 908, 912 (4th Cir. 2013). Under federal common law, claim preclusion applies when there is "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016). Relator does not contest that there is a final judgment on the merits in a prior suit, that being MedCom Action in this district. (*See* ECF No. 149 at 5.) However, Relator contests that the second and third elements of claim preclusion are met in the instant case. (*Id.* at 5–7, 7.)

The second element of claim preclusion—a shared identity of the cause of action in both the earlier and the later suit— "does not turn on whether the claims asserted are identical." *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004). Instead, this Court analyzes "whether the suits and the claims asserted therein 'arise out of the same transaction or series of transactions or the same core of operative facts.'" *Id.* (quoting *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1316 (4th Cir.1996) (additional citations omitted in original)). Defendant Holloway argues that this element is met because "Relator's claims, particularly those alleged against [Defendant Holloway], are based on the same legal theory and the same facts" as the earlier suit. (ECF No. 144 at 9.) Relator's only argument as to the second element is the following: "there is no identity of the cause of action. In *Medcom*, the causes of action

18

were specific to Medcom and there were none alleged against [Defendant Holloway] or that could have been alleged against [Defendant Holloway]." (ECF No. 149 at 7.)

This Court finds the second element of claim preclusion is met here. As stated in the Second Amended Complaint, Relator alleges that Defendant Holloway was an independent contractor sales representative who was employed by MedCom to promote Defendant Integra's products. (ECF No. 95 at 13 ¶ 26, 14 ¶ 27, 15 ¶ 27.) All of the alleged unlawful conduct of Defendant Holloway occurred while he was at MedCom and allegedly done at the behest of the two defendants in the MedCom action, MedCom and Jeff Turpin, for the benefit of Defendant Integra. (ECF No. 95 at 13 ¶ 26, 14 ¶ 27, 15 ¶ 27, 16 ¶ 27, 16–17 ¶ 27, 17 ¶ 27.) Further, the only specified instance of Defendant Holloway's alleged unlawful conduct under the FCA was, in fact, alleged in the Complaint in the MedCom action. *MedCom I*, at *2, *8 (citing Relator's MedCom action Complaint ¶ 16); (ECF No. 95 at 16–17 ¶ 27.) Finally, though it is not required to find the second element satisfied, this Court finds that, when comparing the instant action and the MedCom action, Relator advances the same legal theories to allege nearly identical claims against Defendant Holloway based on almost identical provisions of the FCA. *MedCom I*, at *3 (citing Relator's MedCom action Complaint ¶¶ 20–47); (ECF No. 95 ¶¶ 27, 45–60.)

The third element of the claim preclusion analysis—a shared identity of parties or their privies in the two suits—is also met. *Providence Hall*, 816 F.3d at 276. Relator Nicholson brought suit on behalf of the United States in both the MedCom action and in the instant case. *MedCom I*, at *3; (ECF No. 95 at 1 ¶ 1.) Further, the United States declined to intervene as plaintiff in both the MedCom action and, in the instant case, as to the claims Relator brings

against Defendant Holloway. *MedCom I*, at \*3; (ECF No. 100 at 1.) While the defendants in both cases are distinct, this fact does not end the claim preclusion analysis.

Because Defendant Holloway was not named in the MedCom action, only if he is in privity with the MedCom defendants, MedCom and Jeff Turpin, can claim preclusion bar Relator's claims against him. *See Providence Hall*, 816 F.3d at 276. Defendant Holloway argues, among other things, that his "alleged ability to act on behalf of MedCom satisfies the privity requirement." (ECF No. 144 at 11.) Relator argues that Defendant Holloway "was not a party, or privy to MedCom based on jurisprudence of this Circuit."[8] (ECF No. 149 at 5.) Relator further argues that that Defendant Holloway "failed to meet his burden" of proving privity "[b]ased on the limited categories of relationships that establish privity in this Circuit." (*Id.* at 6.)

The Court finds there is privity between Defendant Holloway and the defendants in the MedCom action, MedCom and Jeff Turpin. In general, "[t]o be in privity with a party to a former litigation, the non-party must be so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005) (internal quotations and citation omitted); *see also Taylor*, 553 U.S. at 894 n. 8 ("privity" is "a way to express the conclusion that nonparty preclusion is appropriate on any ground.") (citation omitted).

Although the Court is not aware of a dispositive Fourth Circuit case on this issue, as a matter of federal common law, employees have been found in several other circuits to have

---

[8] Relator also made several arguments related to claim preclusion under North Carolina law. (ECF No. 149 at 5–7.) As stated above, the preclusive effect of the MedCom action is governed by federal common law, thus, the law of North Carolina is inapplicable here. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citation omitted).

the sort of close and significant relationship with their employers that creates privity and justifies preclusion. *See Sacks v. Texas S. Univ.*, 83 F.4th 340, 346 (5th Cir. 2023), *cert. denied,* 144 S. Ct. 2520 (2024) (citing *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288–89 (5th Cir. 1989) (collecting cases from the First, Seventh, Ninth, and D.C. Circuits supporting privity between employers and employees)); *see also Drawsand v. F.F. Props., L.L.P.*, 866 F. Supp. 2d 1110, 1127 (N.D. Cal. 2011) (citing *Spector v. El Ranco, Inc.*, 263 F.2d 143, 145 (9th Cir. 1959)) (finding that "[a]n employer-employee relationship generally satisfies the privity requirement for matters within the scope of employment"); *Jackson v. Dow Chem. Co.*, 902 F. Supp. 2d 658, 671 (E.D. Pa. 2012), *aff'd*, 518 F. App'x 99 (3d Cir. 2013) (citing *Salerno v. Corzine*, 449 Fed. App'x 118, 122–23 (3d Cir. 2011)) (additional citation omitted) (same); *Brightview Grp., LP v. Glynn*, No. CV SAG-21-3027, 2022 WL 743937, at *9 (D. Md. Mar. 11, 2022) (same) (collecting cases). Given the case law on-point, this Court concludes that while acting within the scope of his employment at MedCom, Defendant Holloway, and his former employers, MedCom and Turpin, did have the sort of close and significant relationship that could support a finding of privity.

Further, Defendant Holloway, as an employee of MedCom, is being sued by Relator for his alleged conduct while employed by MedCom, including conduct that was part of the allegedly unlawful scheme Relator claimed MedCom and Turpin undertook in the MedCom action. (*Compare* ECF No. 95 at 13 ¶ 26) *with MedCom I*, 2020 WL 1245374, at * 2; (*compare* ECF No. 95 at 14 ¶ 27) *with MedCom I*, 2020 WL 1245374, at * 2; (*compare* ECF No. 95 at 16–17 ¶ 27) *with MedCom I*, 2020 WL 1245374, at * 2. These allegations lead this Court to conclude that Defendant Holloway is "so identified in interest" with MedCom and Turpin that "he represents precisely the same legal right in respect to the subject matter involved." *Martin*, 407

F.3d at 651 (internal quotation marks and citation omitted). Defendant Holloway, a newly named defendant in this action, but an employee of an entity previously sued by Relator in the MedCom action, benefits from the preclusive effect of the judgment entered in favor of his employers in a prior suit for conduct he allegedly did on their behalf during the same time period. *Cf. Weinberger v. Tucker*, 510 F.3d 486, 493 (4th Cir. 2007) (finding privity in attorney-client relationship because of the attorney's interests in so identified with his client's); *Kayzakian v. Buck*, 865 F.2d 1258 at *2 (4th Cir. 1988) (unpublished table decision), *cert. denied*, *Kayzakian v. Buck*, 493 U.S. 937 (1989) (citation omitted) (finding that because the "eight new defendants are all employees, co-workers, or administrators of the same governmental bodies as the defendants listed in the prior action and are therefore in privity with them"). Together, these factors together lead this Court to conclude that the initial elements of claim preclusion have been met to bar Relator's causes of action against Defendant Holloway.

Finally, in this Circuit, there are two additional "practical considerations" that must also be considered by this Court. *Providence Hall,* 816 F.3d at 276 (internal quotation marks omitted) (quoting *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003)). First, this Court considers "whether the party or its privy knew or should have known of its claims at the time of the first action." *Id.* (citing *Grausz*, 321 F.3d at 473–74). Second, this Court considers "whether the court that ruled in the first suit was an effective forum to litigate the relevant claims." *Id.* (citing *Grausz*, 321 F.3d at 474).

These two practical considerations are easily satisfied in this case. Relator was aware of Defendant Holloway and his involvement at the time of the MedCom action; this is reflected in the complaint in the MedCom action: Defendant Holloway's alleged unlawful activity in the instant case was alleged in Relator's Complaint in *MedCom I*, and then again

Relator specifically identifies Defendant Holloway in its proposed amended complaint in *MedCom II. MedCom I*, 2020 WL 1245374, at *2 (citing Relator's MedCom action Complaint ¶ 16); *MedCom II*, 2021 WL 981240, at *3 (citing Relator's proposed amended MedCom action Complaint ¶ 16). Further, because the Middle District of North Carolina was selected by Relator as the forum for both actions, Relator has conceded that it is an effective forum to litigate his claims.

Accordingly, Relator's federal claims against Defendant Holloway must be dismissed because they are barred by the doctrine of claim preclusion.

## VI. DEFENDANT INTEGRA'S MOTION TO DISMISS RELATOR'S FEDERAL CLAIMS AGAINST IT IS GRANTED

### A. Relator's Claims Against Defendant Integra That are Based on Their Use of Independent Contractors are Dismissed

Defendant Integra argues that Relator cannot argue that it violated the FCA by using MedCom independent contractors, because this claim is barred by both claim and issue preclusion. (ECF No. 132 at 14, 15.) Relator argues in response that none of his claims are barred by preclusive doctrines. (ECF No. 146 at 5–10.) Relator further argues that Defendant Integra's res judicata arguments are waived because of their lack of specificity and because they ignore adverse precedent and pertinent facts of the instant case. (*Id.* at 5.)

On the issue of res judicata, this Court finds that the Relator's claims, as they pertain to the use of MedCom independent contractors, are barred. As outlined above, for claim preclusion to apply, this Court must find there is an applicable final judgment on the merits in a prior suit, an "identity" of the cause of action in the challenged and preclusive suit, and an "identity" of parties or their privies in the challenged and preclusive suit. *Providence Hall,* 816 F.3d at 276; *see also Pueschel*, 369 F.3d at 354–55 (citation omitted). Relator does not contest

that the MedCom action constitutes valid final judgment on the merits in a prior suit. (*See* ECF Nos. 132 at 16; 146 at 5–10.)

The second element requires "an identity of the cause of action in both the earlier and the later suit." *Pueschel*, 369 F.3d at 354–55. Whether the second element is met "does not turn on whether the claims asserted are identical," *id.* at 355, but instead "whether the suits and the claims asserted therein 'arise out of the same transaction or series of transactions or the same core of operative facts.'" *Id.* (quoting *In re Varat*, 81 F.3d at 1316 (internal citations omitted in original)). Without a doubt, these two suits arise out of the same core of operative facts. The underlying facts to support both suits are based on Relator's observations and knowledge from his employment at Defendant Integra. (*Compare* ECF No. 95 ¶ 4) *with MedCom I*, 2020 WL 1245374, at *2–*3. Both suits involve the same November 2016 transaction with Defendant Holloway, involve Integra's use of independent contractors, such as MedCom, and cross the same span of Relator's tenure with limited exception. (*Compare* ECF No. 95 ¶¶ 26–27) *with MedCom I*, 2020 WL 1245374, at *2–*3. Thus, these two suits satisfy the second element—identity—in their causes of action.

Finally, the third element, the parties disagree about whether Defendant Integra is in privity with either MedCom or Jeff Turpin.[9] Whether Defendant Integra, MedCom, and Jeff Turpin have a relationship of privity is a difficult question. There is "no single fixed definition of privity for purposes of res judicata," *Tucker*, 510 F.3d at 491, and this Court is not aware of any Circuit precedent on this issue. As stated above, "[t]o be in privity with a party to a former

---

[9] Relator contends that *Taylor*'s nonparty preclusion principles apply in this case, however this is incorrect. (ECF No. 146 at 6.) Because Relator was a party in the MedCom litigation the more stringent *Taylor*'s standards of nonparty preclusion does not apply here. 553 U.S. at 892–93 (explaining the rule against nonparty preclusion and its exceptions).

litigation, the non-party must be so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." *Martin*, 407 F.3d at 651 (internal quotations and citation omitted).

To that end, Relator's own pleadings suggest the interconnectedness of Defendant Integra's interests and that of the MedCom action defendants. In the Second Amended Complaint, Relator appears to acknowledge the close relationship between Defendant Integra and MedCom. The Complaint alleges that Defendant Integra's alleged liability is tied to the actions of the MedCom independent contractors; Defendant Integra's alleged purpose in employing MedCom contractors was to shirk off compliance with federal policies; and Defendant Integra allowed FCA prohibited conduct by MedCom contractors even when told it was unlawful. (ECF No. 95 at 3 ¶ 4, ¶¶ 26–29.) These facts suggest the closeness of relationship that leads to a finding of privity. *Martin*, 407 F.3d at 651 (internal quotations and citation omitted). As a result, a claim made against Defendant Integra's use of MedCom independent contractors should likely have been brought along with the *MedCom I* litigation, rather than being alleged for the first time after a dismissal was made on the merits of the MedCom action's claims.

The additional two practical considerations for claim preclusion are easily satisfied in this case. First, Relator "knew or should have known of its claims at the time of the first action." *Providence Hall,* 816 F.3d at 276 (citation omitted). Relator was aware of Defendant Integra at the time of the MedCom action and had filed this action before initiating the MedCom action. (*See* ECF No. 1 at 1); *MedCom I*, 2020 WL 1245374, at *3. Further, the MedCom action relied on facts that supported the instant case. (*Compare* ECF No. 95 ¶ 4) *with MedCom I*, 2020 WL 1245374, at *2–*3. Second, this Court considers "whether the court that

25

ruled in the first suit was an effective forum to litigate the relevant claims." *Providence Hall*, 816 F.3d at 276 (citation omitted). Again, because Relator selected the Middle District of North Carolina as the forum for both of his actions, he has conceded that it is an effective forum for Relator's claims and is empowered to properly rule on them.

To the extent that there are remaining claims alleging inappropriate use of independent contractors that were not employed by MedCom, those claims are dismissed due to their insufficient pleading in the Second Amended Complaint. In particular, Relator often relied on vague or conclusory statements to allege Defendant Integra's scienter, (*see, e.g.*, ECF No. 95 at 11 ¶ 26, 17 ¶ 27, 18 ¶¶ 28–30, 19 ¶¶ 31–32), and also made unspecific allegations of Defendant Integra's alleged unlawful use of non-MedCom independent contractors to promote its products to prove materiality, (*id.* at 15–16 ¶ 27, 18 ¶¶ 28–29). These meandering allegations do not adequately plead a claim just because they parrot FCA terminology. *Boyko*, 39 F.4th at 193 (citing *Iqbal*, 556 U.S. at 678); *see also Boyko*, 39 F.4th at 193 (citing *Iqbal*, 556 U.S. at 678–79 (quoting *Twombly*, 550 U.S. at 557)). Much like what was at issue in *MedCom I*, Relator's Second Amended Complaint fails to properly plead central elements of an FCA violation, including scienter and materiality. *United States ex rel. Complin v. N. Carolina Baptist Hosp.*, 818 F. App'x 179, 182 (4th Cir. 2020) (noting that scienter requires a showing of a defendant's "actual knowledge" of falsity "or deliberate ignorance or reckless disregard of the truth or falsity of the information" provided (citation omitted)); *see also Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 n. 6 (2016) (noting that for "materiality" plaintiff must plead "facts to support allegations of materiality" with "plausibility and particularity").

Further, Relator has not sufficiently pled these allegations against Derma Sciences,[10] whom Relator alleges is now owned by Defendant Integra, the latter of whom Relator wishes to hold accountable for the former's wrongdoing. (ECF No. 95 ¶ 40.) Specifically, as it relates to Derma Sciences, Relator has pled no specific facts to suggest that Defendant Integra was aware of Derma Science's allegedly illegal conduct or that it directed said conduct. (*Id.*); *cf.* *Takeda*, 707 F.3d at 456–57. Without more detail as to not just the "who" but also the "what, where, when, and how" of these entities' involvement in the alleged scheme, *Kellogg*, 525 F.3d at 379 (citations omitted), and their doing so in concert with Defendant Integra, Relator's claims cannot meet even the plausibility requirements that govern review of complaints at this stage, even with all facts and inferences drawn, as appropriate, in Relator's favor.

Accordingly, Relator's federal claims based on alleged wrongdoing by Defendant Integra's independent contractor sales representatives are barred by the doctrine of claim preclusion.

### B. Relator's FCA Retaliation Claim Against Defendant Integra is Barred by the FCA's Statute of Limitations and is Dismissed

In his Second Amended Complaint, Relator pled, for the first time, that Defendant Integra violated the anti-retaliation provision of the FCA. (ECF No. 95 ¶¶ 61–66.) Relator alleges that he was removed from a sales account after making FCA-related complaints in

---

[10] While Relator claims that Derma Sciences' alleged wrongdoing should be imputed to Defendant Integra, Relator provides no information in the Second Amended Complaint for this Court to make such an inference besides stating that Derma Sciences is now owned by Defendant Integra. (ECF No. 95 ¶ 21.) Thus, to the extent that Relator is using Derma Sciences, and the actions of its employees, to allege more wrongdoing against Defendant Integra, the Court does not find this to be plausibly done. *See* Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570 (internal citations omitted). Further, Relator's allegations, (ECF No. 95 ¶¶ 21, 40), certainly cannot alone sustain that Defendant Integra, via Derma Sciences, engaged in unlawful *quid pro quo* conduct. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citations omitted). Nor does this Court find that Derma Sciences has been, in its own right, shown to any degree of particularity that it committed FCA-prohibited conduct in its own right. *Id.*

27

November 2015 and August 2016 and after refusing to engage in FCA-prohibited conduct. (*Id.* ¶ 35.) Relator does not provide a date for his removal from the sales account, but the record suggests it occurred between November 2015 and March 29, 2016, when the First Amended Complaint was filed. (*See id.*; ECF Nos. 1 ¶¶ 17, 20; 64 ¶¶ 24, 26.) Relator also alleges that he suffered retaliation by being constructively terminated; specifically, Relator claims that due to the "deplorable" conditions of his employment, he was forced to leave his position with Defendant Integra in September 2017. (ECF No. 95 ¶¶ 35, 65.)

The anti-retaliation provision of the FCA includes a strict three-year statute of limitations. 31 U.S.C. § 3730(h)(3). The statute unambiguously states that the limitations period commences "when the retaliation occurred." *Id.* Thus, for Relator's allegation that his removal from a sales account was retaliatory—which is alleged to have occurred at some time between November 2015 and March 29, 2016—the statute of limitations expired March 29, 2019 at the latest. (*See* ECF Nos. 95 ¶ 35; 1 ¶¶ 17, 20; 64 ¶¶ 24, 26.) Further, for Relator's allegation that he was constructively discharged from his position—which is alleged to have occurred in September 2017—the statute of limitations expired in September 2020. (ECF No. 95 ¶ 35.) As detailed above, Relator's Second Amended Complaint was filed in October of 2022. (*Id.* at 45.)

In its motion to dismiss, Defendant Integra argues that the statute of limitations bars Relator's retaliation claim because both his alleged removal from a sales account and his alleged constructive discharge occurred more than three years before Relator filed his Second Amended Complaint. (*See* ECF No. 132 at 21.) A statute of limitations defense is "an affirmative defense, which can be the basis of a motion to dismiss under Rule 12(b)(6)." *Dickinson v. Univ. of N. Carolina*, 91 F. Supp. 3d 755, 763 (M.D.N.C. 2015) (citing *Dean v. Pilgrim's*

Case 1:16-cv-00246-LCB-JLW   Document 169   Filed 08/04/25   Page 28 of 42

*Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) (additional citation omitted)). For such a defense to be granted "at this stage, all facts necessary to show the time bar must clearly appear 'on the face of the complaint.'" *Id.* (quoting *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007)) (internal citation omitted in original). Defendant Integra bears the burden of proving this affirmative defense. Fed. R. Civ. P. 8(c).

The Court finds that, because Relator's Second Amended Complaint was filed in October of 2022, it is evident from "the face of the complaint" that Relator's retaliation claim is time-barred. 31 U.S.C. § 3730(h)(3); *Dickinson*, 91 F. Supp. 3d at 763 (citations omitted). Thus, Relator's retaliation claim may only survive the statute of limitations if it can be shown to comply via an exception or other defense. In this vein, Relator argues his retaliation claim survives the statute of limitations because it "relates back" to his earlier-filed Original Complaint and First Amended Complaint. (*See* ECF No. 146 at 16, 18.)

When a party seeks to amend a complaint by adding a claim after the statute of limitations has expired, the claim may still proceed under the relation-back doctrine of Rule 15(c). Fed. R. Civ. P. 15(c); *Goodman*, 494 F.3d at 466. When a pleading is found to "relate back" under Rule 15(c), it is "considered to have been filed on the date that the original pleading which it replaces was filed." *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 346 (4th Cir. 2014). While the initial burden to establish a statute of limitations affirmative defense was Defendant Integra's, *Goodman*, 494 F.3d at 464 (citations omitted), the burden is now on Relator to prove that the relation back doctrine allows his retaliation claim to proceed. *Covey v. Assessor of Ohio Cnty.*, 666 F. App'x 245, 248 (4th Cir. 2016) (citing *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1200 (4th Cir. 1989)).

To relate back, the claim must "[arise] out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see also Mayle v. Felix*, 545 U.S. 644, 664 (2005) (finding that new claims under this standard must come from a "common core of operative facts"). This occurs when "(1) there is a factual nexus between the amendment and the original complaint, and (2) the defendants had notice of the claim and will not be prejudiced by the amendment." *Cannon v. Peck*, 36 F.4th 547, 576 (4th Cir. 2022) (internal quotation marks omitted) (quoting *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983) (additional citation omitted)). When a party "has been given fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back." *Goodman*, 494 F.3d at 471.

Defendant Integra argues that Relator's retaliation claim does not relate back to either the Original Complaint, filed in March 2016, or the First Amended Complaint,[11] filed in January 2017. (ECF Nos. 132 at 21–22; 148 at 10–12.) Defendant Integra argues that the Original Complaint "said nothing about [Relator] being taken off Dr. Pantera's account or constructively terminated." (ECF No. 132 at 21.) Defendant Integra further argues that neither the Original Complaint or First Amended Complaint contain the allegations "necessary

---

[11] Defendant Integra first argued that only the Original Complaint was filed early enough to comply with the statute of limitations, because it was unsealed and filed in 2021. (ECF No. 132 at 21 n. 30.) Relator contested this argument in his Response, stating that First Amended Complaint is deemed filed when it was filed with the clerk's office regardless of its sealing, which was in January 2017. (ECF No. 146 at 16–17.) In its Reply brief, Defendant Integra pivoted and now argues that neither complaint is sufficient to trigger relation back doctrine. (ECF No. 148 at 10 n. 12.) Though neither party properly argued this issue with case law that was on-point, this Court, in accordance with other federal district courts, finds that the First Amended Complaint was "filed" when it was filed as sealed with the clerk, not when it was unsealed and filed again. *Cf. Henderson v. United States*, 517 U.S. 654, 657 n. 2 (1996) (citation omitted); *see also Hayes v. Dep't of Educ. of City of New York*, 20 F. Supp. 3d 438, 444 (S.D.N.Y. 2014) (citing *United States ex rel. Parikh v. Premra Blue Cross*, No. 01 Civ. 0476(MJP), 2007 WL 1031724, at *3 (W.D. Wash. Apr. 3, 2007)).

to allege [the removal was] an adverse employment action," which would include that Relator's reassignment to a new sales account was unfavorable, that Defendant Integra punished Relator through his reassignment, or that Relator was subject to employment conditions that led to his constructive discharge. (ECF No. 148 at 10–11, 11–12.) Relator argues his retaliation claim relates back to both of his earlier complaints. (ECF No. 146 at 16, 18.) To support his argument, Relator points to two paragraphs in the Original Complaint and the "amended allegations" of the First Amended Complaint, the latter of which he argues "added more detail to the timing and scope of the retaliation . . . described in Original Complaint." (*Id.* at 18.)

This Court finds that Relator's allegation in the Second Amended Complaint that his removal from a sales account was retaliatory does not relate back to either his Original Complaint or First Amended Complaint. As for the first condition of relation-back, the Court finds there is a "factual nexus" between Relator's allegations of his removal as reflected in the Second Amended Complaint, (ECF No. 95 ¶ 35), and what is reflected in Relator's earlier complaints, (ECF Nos. 1 ¶ 20; 64 ¶ 26). *Peck*, 36 F.4th at 576. All three complaints allege that Relator was removed from a sales account, including that it was allegedly done in retaliation for Relator's complaints about potential violations of the FCA and refusal to perpetuate similar violations. (*Compare* ECF Nos. 1 ¶ 20; 64 ¶ 26 *with* ECF No. 95 ¶ 35.) This is enough to suggest that Relator's first basis for his retaliation claim, his removal from a sales account, "arose out of the conduct, transaction, or occurrence set out" in the earlier complaints. Fed. R. Civ. P. 15(c)(1)(B); *see also, e.g.*, *Stevens v. Cabarrus Cnty. Bd. of Educ.*, 514 F. Supp. 3d 797, 812 (M.D.N.C. 2021) (finding that a factual nexus between two complaints resting on the same underlying facts and that otherwise newly alleged events were referenced in the earlier complaint).

However, while there is a "factual nexus" between the allegations related to his removal in Relator's present and earlier allegations, this Court finds that the second condition of relation-back—whether defendant has notice and would suffer prejudice—is not satisfied here. *Peck*, 36 F.4th at 576. Defendant Integra did not have notice that Relator's earlier allegations would transform into allegations of adverse employment actions and an FCA retaliation claim. (ECF Nos. 1 ¶ 20; 64 ¶ 26.) Neither of the earlier complaints reflect who removed Relator, whether Realtor's removal was unfavorable to him, or even when Relator was removed. (ECF Nos. 1 ¶ 20; 64 ¶ 26.) Accordingly, this Court cannot conclude that Defendant Integra had notice here, given the limited facts alleged in Relator's earlier complaints. For the aforementioned reasons, Defendant Integra would be improperly prejudiced at this stage of the litigation to allow Relator's earlier scant allegations, some made nearly ten years ago, to sustain a newly developed retaliation claim. *Peck*, 36 F.4th at 576. Concluding otherwise would be permitting Relator's vague, general allegations about Defendant Integra's conduct to be transformed into unlawful retaliation just because Relator now says so.

This Court also finds that Relator's allegation that he was constructively discharged does not relate back to either of Relator's earlier complaints. Here, there is no "factual nexus" between Relator's constructive discharge allegations and his earlier complaints, because Relator did not leave his position with Defendant Integra until September 2017, (ECF No. 95 at 45), which was 9 months after the First Amended Complaint was filed, a year and a half after the Original Complaint was filed, and five years before Relator filed his Second Amended Complaint, (ECF Nos. 1 at 16; 64 at 50). *Peck*, 36 F.4th at 576. Relator's earlier complaints made no mention of even the conditions of his employment that he now alleges led to his

constructive discharge.  (ECF Nos. 1 ¶¶ 17, 20; 64 ¶¶ 24, 26.)  Instead, the facts Relator *newly* alleges in his Second Amended Complaint, (ECF No. 95 ¶ 35), are the kind that could have had given Defendant Integra some of the notice that the relation-back doctrine requires. *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 345 (D. Md. 2011), *aff'd*, 519 F. App'x 199 (4th Cir. 2013) ("'The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'") (quoting *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 150 n. 3 (1984)) (additional citation omitted)).  However, these allegations were only made after the limitations period expired.  For similar reasons, it would also improperly prejudice Defendant Integra to allow Relator to bring his retaliation claim based on his alleged constructive discharge nearly ten years into this litigation.  *Peck*, 36 F.4th at 576.

Accordingly, Relator's FCA retaliation claim against Defendant Integra does not relate back to the allegations of either of its earlier complaints.  Therefore, because it is barred by the FCA's three-year statute of limitations, Relator's retaliation claim against Defendant Integra will be dismissed.

**C.**     **Relator's Remaining Allegations of *Quid Pro Quo* Conduct by Defendant Integra are Dismissed per a Settlement Agreement and are Otherwise Insufficiently Pled**

Defendant Integra also argues that Relator may not bring FCA claims against it based on its alleged *quid pro quo* conduct because the terms of a settlement agreement[12] bar Relator from doing so.  (ECF No. 132 at 24–25.)  In addition, Defendant Integra argues that to the

---

[12] In its Reply brief, Defendant Integra encouraged the Court to review the terms of the settlement agreement between itself, Relator, and the United States, suggesting that the Court conduct *in camera* review.  (ECF No. 148 at 13.)  The Court asked for a copy of the settlement agreement and conducted its *in camera* review.  The Court did not ask for the settlement agreement to be filed into the record, and it will remain unfiled.

extent there are any claims against it based on *quid pro quo* conduct that is not barred by the settlement agreement, they cannot proceed because they are inadequately pled. (*Id.* at 25–26.) In response, Relator argues that his allegations are not barred and that he adequately pled facts related to *quid pro quo* conduct by Defendant Integra and Derma Sciences to support his FCA claims against it. (ECF No. 146 at 14–16.)

This Court will first address the parties' arguments related to the effect of the terms of the settlement agreement, which was entered into by the United States, Relator, and Defendant Integra. In its opening brief, Defendant Integra argued that certain of Relator's allegations in the Second Amended Complaint—*quid pro quo* conduct between Relator and Defendant Dr. Pantera—cannot be pled against it because it is covered conduct per the settlement agreement. (ECF No. 132 at 24–25.) Relator argued in its Response that Defendant Integra "presented no legal authority for its position, nor does it point to any language in the Settlement Agreement to support its argument." (ECF No. 146 at 15.) In its Reply brief, Defendant Integra offered to provide a copy of the settlement agreement to the Court for *in camera* review. (ECF No. 148 at 13.) Later, Relator filed a Motion to Strike these arguments, arguing that Defendant Integra improperly offered this Court a copy of the settlement agreement. (ECF No. 151 at 9.) This Court found that the settlement agreement was relevant to resolving the parties' arguments on this matter, it denied Relator's Motion to Strike Defendant Integra's arguments. (ECF No. 168 at 6.)

Because the parties have placed the terms of the settlement agreement at the center of their arguments in Defendant Integra's motion to dismiss, this Court finds it necessary to discuss its *in camera* review of the settlement agreement. Though the settlement agreement has not been made available on the electronic case file docket for this case, the terms of the

34

agreement indicate that the parties consented to the United States' disclosure to the public information about the agreement and the agreement itself. Accordingly, this Court will proceed to analyze the terms of the settlement agreement to determine whether they bar some of Relator's allegations that Defendant Integra engaged in *quid pro quo* conduct. Given that this is not a publicly filed document, the Court will excerpt only the parts of the settlement agreement that are necessary to resolve the dispute between the parties about its terms.

Per the United States' stipulation of partial dismissal, certain "Covered Conduct" in the settlement agreement was dismissed with prejudice by both the United States and Relator. (ECF No. 103 ¶¶ 1, 3.) The settlement agreement describes the "Covered Conduct" as

> [C]ertain civil claims against [Defendant] Integra arising from remuneration provided by [Defendant] Integra to [Defendant] Dr. Peter Pantera relating to [Defendant] Dr. Pantera's use of Primatrix and Omnigraft between June 1, 2014[,] and August 31, 2016, as a result of which the United States further contends that [Defendant] Integra presented or caused to be presented false claims for payment.

Settlement Agreement.

Defendant Integra argues that some of Relator's allegations of its *quid pro quo* conduct in the Second Amended Complaint is "Covered Conduct" that was dismissed with prejudice. (ECF No. 132 at 24–25.)

The Second Amended Complaint, filed by Relator after the settlement agreement was executed, contains about four pages of Defendant Integra's alleged *quid pro quo* conduct. (ECF No. 95 ¶¶ 31–35.) These pages describe what Relator claims are unlawful "marketing practices."[13] (*Id.*) These practices reflect Relator being directed to fulfill, and thereafter fulfilling, the requests of Defendant Dr. Pantera in exchange for his use of Primatrix and

---

[13] Relator also describes allegations of Defendant Integra's alleged retaliation against him and the actions of a dismissed Defendant, MiMedx. (ECF No. 95 at 19 ¶ 31–22 ¶ 35.)

35

Omnigraft on patients at the Durham Veterans' Affairs Medical Center. (*Id.*) All of the dates Relator claims this *quid pro quo* conduct occurred were between June 2015 and August 2016. (*Id.*) In addition, Relator generally claims that he witnessed this *quid pro quo* conduct during his tenure, which occurred from "2014 to September 2017." (*Id.* ¶ 31.)

This Court finds that the terms of the settlement agreement bar Relator's allegations of Defendant Integra's alleged *quid pro quo* conduct with Defendant Pantera. These allegations constitute "Covered Conduct," dismissed with prejudice as a stipulation of the settlement agreement. To the extent that Relator claims that there are allegations made during his tenure not included in the settlement agreement's "Covered Conduct," (ECF No. 146 at 15), the Second Amended Complaint does not distinguish or identify any *quid pro quo* conduct by Defendant Integra occurring at that time. (ECF No. 95 ¶¶ 31–35.) Indeed, the Second Amended Complaint does not provide dates of instances before June 2014 or after August 2016 to show this Court what *quid pro quo* conduct, if any, Defendant Integra directed or undertook. (*Id.*) Thus, Relator's allegations of Defendant Integra's *quid pro quo* misconduct in the Second Amended Complaint are not properly before this Court and cannot be used to support Relator's claims against Defendant Integra.

Further, to the extent that Relator argues that the *quid pro quo* conduct of Derma Sciences, a company bought by Defendant Integra, is outside the terms of the settlement agreement, those claims also must be dismissed because they are insufficiently pled. Derma Sciences is mentioned only four times in the Second Amended Complaint, with only two paragraphs containing specific information about the company. (ECF No. 95 ¶¶ 21, 40.) The first paragraph alleges Derma Sciences is now owned by Defendant Integra and identifies a product, "Unnaboot", which Relator alleges was once sold by Derma Sciences. (*Id.* ¶ 21.)

36

Only the actions of one alleged employee of Derma Sciences, John Dempsey, is implicated in the broader FCA wrongdoing and conspiracy alleged by Relator:

> Dempsey worked for a company called Derma Sciences, and he promoted the products referred to as "Unnaboot" and "Medihoney." Pantera required Dempsey to provide free lunches/dinners in exchange for the utilization of the products Unnaboot and Medihoney throuhout [sic] Relator's tenure with Defendant Integra. In fact, relator learned, according to Pantera, that VA benefits also paid for these products based on the same scheme that lasted until on or about January 2017, including on patient B.M at or about November 2016.

(*Id.* ¶ 40.)

Relator alleges no additional facts related to the *quid pro quo* performed by Derma Sciences employees, including the conduct of Derma Sciences sales representative John Dempsey. These bare, unconnected, allegations by Relator do not meet even the lowest requirement of plausibility of pleadings under Rule 8. *See* Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570) (internal citations omitted).

Accordingly, Relator's allegations of *quid pro quo* conduct cannot be a basis for Relator's federal FCA claims against Defendant Integra because it is barred from doing so by the terms of a binding settlement agreement and has otherwise insufficiently pled them against Defendant Integra.

## VII.  RELATOR'S FEDERAL CLAIMS AGAINST DEFENDANTS SMITH & NEPHEW, HOLLOWAY, AND INTEGRA ARE DISMISSED WITH PREJUDICE[14]

In conclusion, Relator's three federal claims against Defendant Smith & Nephew— presenting false claims, (ECF No. 95 ¶¶ 45–51), making false records or statements, (*id.* ¶¶

---

[14] The Court acknowledges that Relator included in his motions to dismiss proposed amendments to his Second Amended Complaint—in the event that the Court were to adopt the Defendants' arguments. (ECF Nos. 145 at 15–17). However, not only is that not in conformity with this District's motion practice under the Local Rules, L.R. 7.3, this Court, having dismissed all of Relator's federal claims with prejudice is done because further amendment cannot cure the fallacies found in Relator's Second Amended Complaint.

52–56), and conspiracy to submit false claims, (*id.* ¶¶ 57–60)—will be dismissed. Relator's allegations against Defendant Smith & Nephew in the Second Amended Complaint are neither plausibly nor particularly pled, therefore, they do not comply with the requirements of Federal Rules of Procedure 8(a)(2) and 9(b). Thus, Relator fails to make its claims against Defendant Smith & Nephew in the Second Amended Complaint.

Next, Relator's three federal claims against Defendant Holloway—presenting false claims, (*id.* ¶¶ 45–51), making false records or statements, (*id.* ¶¶ 52–56), and conspiracy to submit false claims, (*id.* ¶¶ 57–60)—must also be dismissed. Relator's claims against Defendant Holloway, should have and could have been made by Relator during the MedCom action, litigation that has concluded with a valid, final judgment on the merits. Thus, Relator fails to make its claims against Defendant Holloway, because they are barred by the doctrine of claim preclusion.

Finally, none of Relator's remaining federal claims against Defendant Integra may proceed. Relator brings three initial claims against Defendant Integra; his first claim—presenting false claims, (*id.* ¶¶ 45–51), his second claim—making false records or statements, (*id.* ¶¶ 52–56), and his third claim—conspiracy to submit false claims, (*id.* ¶¶ 57–60). These three claims rely on allegations about the actions of Defendant Integra's independent contractor sales representatives and in-house sales representatives, the actions of other Integra employees, the actions of Derma Sciences employees, and Defendant Integra's actions in conspiracy with the other co-defendants in this action. (*Id.* ¶ 45 (citing *id.* ¶¶ 1–43); *id.* ¶ 53 (citing *id.* ¶¶ 1–43); *id.* ¶ 58 (citing *id.* ¶¶ 1–43).)

As stated above, Relator's allegations related to the actions of Defendant Integra's MedCom independent contractor are barred by res judicata. Relator's allegations about the

actions of the non-MedCom independent contractors were not adequately pled. Allegations related to Defendant Integra's own sales representatives are barred by the terms of the binding settlement agreement between Relator, Defendant Integra, and the United States. Defendant Integra's role in the alleged FCA conspiracy, because it relies on the aforementioned facts, cannot be adequately pled.

Finally, Relator's fourth claim—FCA retaliation, (*id.* ¶¶ 61–66), cannot be pled because the applicable statute of limitations has expired, and the claim cannot be related back to Relator's earlier complaints.

Thus, upon this Court's review of the allegations of the Second Amended Complaint, Relator's only remaining matter against Defendant Integra is the resolution of Relator's attorneys' fees, as authorized in their settlement agreement, (ECF No. 103 ¶ 2). All other federal claims between Relator and Defendants Smith & Nephew, Holloway, and Integra have herein been dismissed.

## VIII. RELATOR'S STATE-LAW CLAIMS AGAINST DEFENDANTS SMITH & NEPHEW, HOLLOWAY, AND INTEGRA ARE DISMISSED WITHOUT PREJUDICE

Relator also brings several claims arising under state law against Defendants Smith & Nephew, Holloway, and Integra. (*Id.* ¶¶ 67–141.) The claims are companion false claims causes of action that arise under state-law for the states of North Carolina, (*id.* ¶¶ 67–75), Illinois, (*id.* ¶¶ 76–86), Louisiana, (*id.* ¶¶ 87–97), Michigan, (*id.* ¶¶ 109–19), and Tennessee, (*id.* ¶¶ 120–29); as well as the commonwealths of Massachusetts, (*id.* ¶¶ 98–108), and Virginia, (*id.* ¶¶ 130–41). Defendants Smith & Nephew, Holloway, and Integra each ask this Court to dismiss the state law claims or decline to exercise supplemental jurisdiction over these claims and dismiss them with prejudice. (ECF Nos. 132 at 13, 32; 138 at 27, 27 n. 6; 144 at 22–23.)

Relator does not explicitly challenge Defendants Smith & Nephew, Holloway, and Integra's arguments but asks that each of their motions to dismiss be denied in their entireties. (ECF Nos. 145 at 17; 146 at 21; 149 at 21.)

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A district court may exercise supplemental jurisdiction 'over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy.'" *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (alteration in original) (quoting 28 U.S.C. § 1367(a)). However, "a district court 'may decline to exercise supplemental jurisdiction' when it 'has dismissed all claims over which it has original jurisdiction.'" *Id.* (quoting 28 U.S.C. § 1367(c)). A trial court has "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished," *id.* (citing *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *MedCom III*, 42 F.4th at 196–97), and its decision to retain or decline supplemental jurisdiction is reviewed for an abuse of discretion, *Id.* (citing *PEM Entities LLC v. County of Franklin*, 57 F.4th 178, 181 (4th Cir. 2023)); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).

To determine whether it should exercise jurisdiction, this Court considers factors such as "the 'convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy.'" *Henderson*, 102 F.4th at 251 (citing *Shanaghan*, 58 F.3d at 110). Given that the State Plaintiffs have declined to intervene in the state-law claims made by Relator, (ECF Nos. 101 at 1; 105 at 1), this Court finds that the interests in federal policy and comity in this case have very limited weight. Further, in the interest of judicial economy, the resolution of this case is better placed in the hands of state

40

courts, given that the remaining claims in the instant case sound in state-law. Further, "when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)); *accord Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001).

Accordingly, having dismissed Relator's federal claims against Defendants Smith & Nephew, Holloway, and Integra, this Court declines to exercise supplemental jurisdiction over his associated state-law claims and they are dismissed without prejudice.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS ORDERED** that Defendant Smith & Nephew's Motion to Dismiss, (ECF No. 137), is **GRANTED in part and DENIED in part**. It is granted to the extent that Relator's federal claims against Defendant Smith & Nephew are each **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. It is further denied to the extent that Relator's associated state-law claims against Defendant Smith & Nephew are each **DISMISSED WITHOUT PREJUDICE** because this Court declines to exercise supplemental jurisdiction over these claims.

**IT IS FURTHER ORDERED** that Defendant Holloway's Motion to Dismiss, (ECF No. 143), is **GRANTED in part and DENIED in part**. It is granted to the extent that Relator's federal claims against Defendant Holloway are each **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. It is further denied to the extent that

Relator's associated state-law claims against Holloway are each **DISMISSED WITHOUT PREJUDICE** because this Court declines to exercise supplemental jurisdiction over these claims.

 **IT IS FURTHER ORDERED** that Defendant Integra's Motion to Dismiss, (ECF No. 131), is **GRANTED in part and DENIED in part.** The federal claims made by Relator against Defendant Integra are each **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

 **IT IS FURTHER DENIED** to the extent that Relator's associated state-law claims against Defendant Integra are each **DISMISSED WITHOUT PREJUDICE** because this Court declines to exercise supplemental jurisdiction over these claims.

 This, the 4th day of August 2025.


      /s/ Loretta C. Biggs
      Senior United States Senior District Judge